Matthew J. BENNETT, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

No. CIV.A. 7:04CV00705.

United States District Court,
W.D. Virginia,
Roanoke Division.

March 29, 2005.

Matthew J. Bennett, Troutville, VA, pro se.

Charles H. Keen, United States Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION

CONRAD, District Judge.

Michael J. Bennett ("Bennett") brings this action pursuant to 26 U.S.C. § 7433 claiming that the Internal Revenue Service ("IRS") improperly requested that his employer disregard his W–4 and withhold federal income taxes in accordance with its direction. Bennett seeks an injunction to prevent the IRS from continuing its action as well as the return of all funds withheld in accordance with IRS instructions. This case is before the court on defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the court will grant defendant's motion to dismiss.

### FACTUAL BACKGROUND

In a letter dated December 5, 2003, Stephen P. Warner, an Operations Manager, Collection, with the Questionable W–4 Program at the Internal Revenue Service office in Fresno, California requested that Roanoke County Fire & Rescue, the employer of Matthew J. Bennett, disregard Bennett's W–4 and withhold tax as if he were claiming single filing status with zero allowances. Bennett's employer complied with the IRS's request. Bennett believed that the IRS had taken an unauthorized action and wrote a series of letters communicating his position to Stephen Warner; Marilyn Brincefield at Fresno Compliance Services; Representative Bob Goodlatte; the Inspector General for Tax Administration; and the Commissioner of the IRS.

In March of 2004, the Fresno IRS office forwarded Bennett's initial letter to the IRS Appeals Office in Fresno. The Appeals Officer incorrectly believed that Bennett was appealing a $500 penalty assessed because of an incorrect W–4 form. Bennett responded that he was not appealing a penalty but was contesting the validity of the IRS's instruction to his employer. On July 13, 2004, the Appeals Officer sent a second letter to Bennett informing him that the appeal procedure did not apply to refusals to comply with the tax laws because of constitutional or similar grounds. The Appeals Office then returned Bennett's file to the W–4 Unit as a premature referral.

On August 1, 2004, Bennett reiterated his position in another letter to Stephen Warner at the Questionable W–4 Unit in Fresno. Bennett stated that he believed the IRS had no authority to override his W–4 and to require his employer to withhold federal income tax in accordance with its instructions. In a letter dated August 25, 2004, Warner responded that the IRS did have the authority to enact regulations to administer and enforce the tax laws and that those regulations gave the IRS the authority to determine whether withholding certificates are correct. In a final letter sent on September 6, 2004, Bennett again stated his position and requested that the IRS rescind its earlier request to his employer. Bennett then filed this suit on November 30, 2004.

On February 14, 2005, the United States filed its motion to dismiss claiming that Bennett's suit is barred by the doctrine of sovereign immunity, the court lacks subject matter jurisdiction, and the complaint seeks prohibited declaratory and injunctive relief. Bennett filed a timely response to the government's motion on March 7, 2005.

### STANDARD OF REVIEW

When deciding a motion to dismiss under Rule 12(b)(6), the court must determine "whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient." *Eastern Shore Markets, Inc. v. J.D. Assocs., Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000). The court must accept the allega-

tions in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. The court should not dismiss a complaint for failure to state a claim, unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### DISCUSSION

I. *Was the action of the IRS a collection action to which the remedy afforded by 26 U.S.C. § 7433 applies?*

■ A taxpayer may bring an action against the United States in a district court if an officer or employee of the IRS, *in connection with the collection of any federal tax,* recklessly, intentionally, or negligently disregards any statutory or regulatory provision. 26 U.S.C. § 7433(a) (emphasis added). This waiver of sovereign immunity, however, "must be strictly observed and construed in favor of the sovereign." *Gonsalves v. I.R.S.*, 975 F.2d 13, 15 (1st Cir.1992) (internal citations omitted). Therefore, the United States Court of Appeals for the Fourth Circuit has held that " § 7433 provides for a 'civil action' only for damages arising from the 'collection' of taxes, not for damages arising from the investigation and determination of tax liability." *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 411 (4th Cir. 2003). Furthermore, liability under that section arises only "where an IRS agent has violated the taxing statutes or the regulations promulgated under them." *Gonsalves v. I.R.S.*, 975 F.2d 13, 16 (1st Cir.1992).

The government contends that the withholding process is a pre-assessment process and not a collection of tax in the usual sense of the word. The government also points out that a taxpayer need not initiate a lawsuit to recover excess withholdings because any excess withheld would be re-turned to the taxpayer when he filed his income tax return. The government concludes that, because there has been no collection action, the court lacks jurisdiction over Bennett's cause of action and his suit should be dismissed accordingly. Bennett responds that the correspondence he received from the IRS as well as various Internal Revenue Code sections do characterize withholding payments as "collections," not assessments or determinations of tax.

■ The assessment of a tax is "the decision to impose tax liability," while collection activity describes the "conduct of an agent trying to collect the taxes owed." *Shaw v. United States*, 20 F.3d 182, 184 (5th Cir.1994). If Bennett were disputing the withholding at issue here solely because he believed the IRS had improperly determined the correct number of allowances or his filing status, he would have no claim under § 7433 because such a claim would relate to the decision to impose tax liability and the determination of tax, rather than its collection.

In this case, however, Bennett claims that he is disputing the method of the withholding in that he claims the IRS improperly overrode his W–4 with its own instructions to his employer. In *Gonsalves, supra,* the Court described IRS action with regard to that plaintiff's income taxes as "collections" of the taxes withheld from the plaintiff's salary. 975 F.2d at 14. In fact, Title 26, Chapter 1, Subchapter C of the Code of Federal Regulations deals with the withholding of employment taxes and is entitled "Employment Taxes and *Collection* of Income Tax at the Source." (Emphasis added). It appears that the withholding of income taxes and the subsequent payment of those taxes to the government by an employer does fall within the definition of collection activities rather than assessment activities.

Therefore, Bennett's claim properly falls under 26 U.S.C. § 7433.

## II. *Did Bennett fail to properly exhaust his administrative remedies?*

█ The government contends that Bennett failed to properly exhaust his administrative remedies and that, therefore, the court does not have jurisdiction to hear his claims. A taxpayer may not bring suit under 26 U.S.C. § 7433 until he has exhausted the administrative remedies available within the IRS. 26 U.S.C. § 7433(d)(1). Internal Revenue regulations lay out the proper procedure for bringing an administrative claim against the United States. *See* 26 C.F.R. § 301.7433–1(e). The regulations state that any administrative claim must be sent in writing to the Area Director, Attn: Compliance Technical Support Manager of the area in which the taxpayer resides. 26 C.F.R. § 301.7433–1(e)(1). A 2003 Internal Revenue Bulletin changed this provision and stated that claims should be sent to the case processing site for the area in which the taxpayer resides. 2003–19, 2003–14 IRB 703, April 7, 2003.

The administrative claim must include the following information:

(i) The name, current address, current home and work telephone numbers and any convenient times to be contacted, and taxpayer identification number of the taxpayer making the claim;

(ii) The grounds, in reasonable detail, for the claim [ ];

(iii) A description of the injuries incurred by the taxpayer filing the claim [ ];

(iv) The dollar amount of the claim, including any damages that have not yet been incurred but which are reasonably foreseeable [ ]; and

(v) The signature of the taxpayer or duly authorized representative.

26 C.F.R. § 301.7433–1(e)(2). The regulations go on to state that a taxpayer may not bring an action in federal district court for any amount in excess of that sought in the administrative claim, unless the taxpayer can show that "the increased amount is based upon newly discovered evidence not reasonably discoverable at the time the administrative claim was filed, or upon allegation and proof of intervening facts relating to the amount of the claim." 26 C.F.R. § 301.7433–1(f).

The government contends that Bennett failed to properly present his claim as required by the regulations. The government notes that, even if Bennett's letters were to be construed as a claim under § 7433, they fail to satisfy all of the requirements of the regulation. Specifically, none of Bennett's letters were sent to the correct place, only some contain the proper contact information, and none state a precise dollar amount of his claim. The government also notes that courts have interpreted the exhaustion requirement as jurisdictional, *see e.g., Simmons v. United States*, 875 F.Supp. 318, 319 (W.D.N.C. 1994), and concludes that the court lacks jurisdiction here because Bennett failed to properly present his claim and exhaust his administrative remedies.

The plaintiff responds by characterizing the regulation at issue, 26 C.F.R. § 301.7433–1, as an "interpretive Treasury decision" not authorized by any particular statute and concludes that the provisions of the regulation are not binding on him and his claim. Contrary to plaintiff's contention, however, Congress has expressly delegated the administration and enforcement of the Internal Revenue Code to the Secretary of the Treasury who may prescribe regulations in furtherance of the purposes of the Code. 26 U.S.C. § 7801(a)(1). There is no allegation that

the regulation at issue here was improperly enacted.

Bennett next asserts that IRS employees, including Stephen Warner and Marilyn Brincefield, told him that his only remaining remedy was to file a lawsuit. Plaintiff also claims that he had written a letter directly to the IRS Commissioner who failed to respond or inform him of the proper steps to file his administrative claim. Bennett also contends that his letters to various personnel within the IRS *did* include all the necessary information required by the regulation. Finally, Bennett argues that he failed to include the specific amount of his claim because that amount continues to increase as his employer withholds the tax.

In *Hunt v. United States,* the plaintiff had also had voluminous correspondence with the IRS regarding allegedly improper liens. *Hunt v. United States,* 178 F.Supp.2d 537 (D.Md.2002). However, the plaintiff in Hunt had failed to provide the IRS with any documentation indicating the amount of damages he had allegedly suffered. 178 F.Supp.2d at 538. The Court held that "assertion of the amount of alleged damage is an essential part of the administrative remedy process; a claimant cannot recover an amount in excess of the dollar amount sought in the administrative claim." *Id.* Therefore, the Court found that all of the plaintiff's claims failed because he had failed to exhaust his administrative remedies. *Id.*

Likewise, in this case, Bennett failed to provide any representative of the IRS with the amount he claimed in damages. In addition, he failed to send his requests to the correct location for an administrative claim and failed to include the required information in some of the letters he did send to various offices. It does appear that Bennett has failed to follow the proper procedure for an administrative claim within the IRS and, as a result, has failed to exhaust his administrative remedies. Regardless of whether plaintiff has properly exhausted his administrative remedies, however, his claim would still fail because of the operation of the Anti–Injunction Act and the statute governing civil actions to obtain refunds of income taxes, as discussed below.

### III. *Is Bennett's requested relief barred by statute?*

 The government contends that the relief Bennett seeks, an injunction to prevent the IRS from refusing to accept his own W–4, is barred by the Anti–Injunction Act. The Anti–Injunction Act provides as follows:

> [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a). The Fourth Circuit has described the effect of the Act as "simple and obvious: courts lack jurisdiction to issue injunctive relief in suits seeking to restrain the assessment or collection of taxes." *Judicial Watch, Inc. v. Rossotti,* 317 F.3d 401, 405 (4th Cir.2003). Furthermore, the prohibition in the Act applies whenever "the IRS action represents 'a good-faith effort to enforce the technical requirements of the tax laws.'" *Id.* at 407 (quoting *Bob Jones University v. Simon,* 416 U.S. 725, 740, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974)). Because Bennett seeks to restrain the IRS from collecting certain taxes, the Anti–Injunction Act would appear to apply unless one of two exceptions applies.

 First, an action will not be barred if the plaintiff can show that (1) under no circumstances could the government ultimately prevail and (2) equity jurisdiction exists. *Id.* at 407. The plaintiff

bears this burden of proof and the government will obtain a dismissal if it has a good faith basis for its claim. *Elias v. Connett,* 908 F.2d 521, 525 (9th Cir.1990). To succeed in his claim, Bennett must prove that the IRS or its agents recklessly, intentionally, or negligently failed to follow the prescribed methods for the collections of taxes as established by statute or regulation. 26 U.S.C. § 7433(a). *See also, Gonsalves v. IRS,* 975 F.2d 13, 16 (1st Cir. 1992); *Shaw v. United States,* 20 F.3d 182, 184 (5th Cir.1994). Bennett claims that the IRS had neither statutory nor regulatory authority to order his employer to withhold taxes from his paycheck at a rate other than that determined by the W–4 provided by Bennett to his employer. Specifically, Bennett claims that the regulation cited by the IRS as the basis of its authority to instruct his employer to disregard his W–4 is not authorized by any specific provision of the Internal Revenue Code.

Bennett's contention with regard to the invalidity of the regulation is without merit. As noted previously, the administration and enforcement of the Internal Revenue Code is delegated by statute to the Secretary of the Treasury who may prescribe regulations in furtherance of the purposes of the Code. *See* 26 U.S.C. § 7801(a)(1). Furthermore, all persons liable for any tax or the collection of any tax under the terms of the Internal Revenue Code are required to comply with the rules and regulations prescribed by the Secretary. 26 U.S.C. § 6001. One of those requirements is that an employer must deduct and withhold from its employees' wages the tax determined in accordance with the provisions of the Code. 26 U.S.C. § 3402. In fact, the employer itself can be liable to the government for the amount of the tax that must be withheld in accordance with the Code. 26 U.S.C. § 3403.

In furtherance of these purposes, regulations specify that the IRS may find that a withholding exemption certificate is defective and may instruct the employer to withhold taxes from the employee on the basis of instructions from the IRS rather than in accordance with the W–4 furnished by the employee. 26 C.F.R. § 31.3402(f)(2)–1(g)(5). Courts have noted that an employer is obligated to comply with the instructions of the IRS in withholding sums from the paychecks of its employees, even when those directions conflict with the information provided by the employee on his withholding certificate, because the employer is simply complying with applicable IRS code sections and regulations governing withholding. *See, e.g., Chandler v. Perini Power Constructors, Inc.,* 520 F.Supp. 1152, 1153 (D.C.N.H.1981); *McFarland v. Bechtel Petroleum, Inc.,* 586 F.Supp. 907, 910 (N.D.Cal.1984).

Here, the IRS appears to have acted in accordance with properly authorized regulations that permit it to override an employee's withholding certificate. In this case, there is no indication that the IRS did anything other than follow those requirements in notifying Bennett's employer to withhold at a different rate. Regardless of whether Bennett could ultimately prove that the IRS improperly calculated the proper number of exemptions, it appears that the IRS followed prescribed methods of collection and that, therefore, Bennett's claim under 26 U.S.C. § 7433 is without merit. Therefore, the first exception to the Anti–Injunction Act would not apply.

▆▆▆ The second exception applies "where ... Congress has not provided the plaintiff with an alternative legal way to challenge the validity of the tax." *Judicial Watch Inc.,* 317 F.3d at 408 (quoting *South Carolina v. Regan,* 465 U.S. 367, 373, 104

S.Ct. 1107, 79 L.Ed.2d 372 (1984)). The exception would not apply, however, where a plaintiff has any access to judicial review, even if the plaintiff did not have access to a legal remedy for the precise harm allegedly suffered or did not like the available remedy. *Id.* In Bennett's case, he does have a legal remedy to reclaim any excess amount of income tax withheld. He can simply file his income tax return for the year and receive a full refund of any overpayment.[1] Therefore, this exception does not apply.

Bennett contends that, while the Anti–Injunction Act may bar an injunctive remedy for the authorized collection or assessment of tax, the Act does not apply here because the IRS has used an unauthorized collection method. Again, this goes back to his argument that the IRS has no authority to override the W–4 he provided to his employer and require his employer to withhold taxes at a higher rate. As noted previously, however, the regulations do appear to authorize the IRS to take such action. The Anti–Injunction Act is, therefore, a bar to Bennett's request for an order to restrain the IRS from taking its collection action.

In addition to his request for injunctive relief, Bennett has also requested that the court order the IRS to return all the income taxes withheld by his employer in accordance with the IRS's direction. Bennett claims that he will not ultimately owe any federal income tax.

Civil actions to obtain refunds of taxes are governed by 26 U.S.C. § 7422 which provides, in pertinent part, as follows:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, ... or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). The regulations regarding claims for credit or refund of income taxes specify that "in the case of an overpayment of income taxes, a claim for credit or refund of such overpayment shall be made on the appropriate income tax return." 26 C.F.R. § 301.6402–3(a)(1). A claim under § 7433 "was not intended to supplement or supersede, or to allow taxpayers to circumvent" the proper procedures under § 7422. *Gonsalves v. I.R.S.,* 975 F.2d 13, 16 (1st Cir.1992). Therefore, unless a taxpayer files the proper refund claim, the district court lacks jurisdiction over a refund action. *Szego v. C.I.R.,* 911 F.2d 724, 1990 WL 116744 (4th Cir.1990). Bennett has not alleged that he has made such a claim on any income tax return. As a result, it appears that he may not maintain a separate civil action under § 7433 to recover the amount of income tax that he alleges was excessive or wrongfully collected.

### CONCLUSION

Bennett's cause of action is generally governed by 26 U.S.C. § 7433 because the withholding of federal income taxes and their subsequent payment to the government is properly considered a collection activity. Bennett's suit probably may be dismissed based upon his failure to exhaust his administrative remedies. Even if those remedies were properly exhausted, however, the court would lack jurisdiction

---

1. Bennett has made no claim as to any interest potentially lost between the time his federal income taxes were withheld and the time of any tax refund, therefore the court need not address that issue.

to entertain his claim because the relief Bennett requests is barred by the Anti–Injunction Act and the operation of 26 U.S.C. § 7422 governing suits for the refund of income taxes. In any case, Bennett has not suffered any real injury here because he has the opportunity to file his federal income tax return and receive the full amount of any income taxes withheld that are in excess of his ultimate tax liability. The court will grant the defendant's motion to dismiss.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to plaintiff and all counsel of record.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

### ORDERED

that the defendant's motion to dismiss is GRANTED.

The Clerk is directed to send certified copies of this Order to plaintiff and all counsel of record.